Mr. Mamon May it please the court. Congress enacted 38 U.S.C. section 1722A to allow the VA to charge certain veterans a copayment for medications with the restriction that the copayment the medication to the VA. But since 2001, the VA has been systematically overcharging Mr. Hino and other veterans like him for their medications. As the court below recognized, the facts of this case are not in dispute. The legal question presented is whether the statutory language cost to the secretary for the medication is what the secretary paid for the medication or includes, as the VA contends, whatever administrative or overhead costs that the VA can peg as being related, however tangentially, to its service of providing pharmaceuticals. The language and the context of the statute answer that question. The VA's interpretation should be rejected at the first step of the Chevron inquiry as being contrary to the plain meaning of section 1722A. In context, the cost in section 1722A that Congress used to set the maximum copayment is the purchase cost of the medication. Mr. Mahan? Yes, Your Honor. Since you brought up Chevron, where does the Brown Cannon fit? Step one, step two, not at all? Your Honor, the Brown Cannon, the veterans cannon as we have referred it to, fits into both steps. It definitely fits into step one of the Chevron inquiry. If you look at, I think, footnote nine of Chevron, it talks about employing the tools of statutory interpretation. This court's opinion in Kilpatrick also talked about the tools that we use for statutory interpretation. Among those tools are the relevant cannons. And so it definitely, and that's at step one in this court's rule of determining whether there's ambiguity in the statute for the agency to fill. And so it definitely would apply at step one in this But it also has meaning in step two as well. This court, I'm not aware of opinions from this court, but other courts have definitely said these cannons are relevant to determining the reasonableness of the agency's interpretation. And so looking at whether the agency has reasonably interpreted any ambiguity, it can certainly look at whether that interpretation of ambiguity was in favor of the veterans or not. But at step one, which I think this case can be addressed and concluded at step one, in that to the extent the VA contends that there is any ambiguity in what cost to the secretary means, that ambiguity in accordance with the veterans cannon should be resolved in favor of the veteran. That cost is limited to the purchase price. Now, 1722a, little a two, points back to little a one. And that talks about the cost to the secretary for furnishing the medication to the veteran. And those furnishing costs are precisely the pharmacy costs and the other administrative overhead, which the secretary points to. Well, Your Honor, I would respectfully disagree that the section a one, which a two refers back to, is talking about the cost of furnishing. I think this is a very key point, that section a one isn't talking about the cost of furnishing. It's talking about the cost of a 30-day supply. That language furnished, which follows, is a descriptor of what supply are we talking about. So what Congress is saying here is, we're going to charge co-payment. That co-payment can exceed the cost of a supply of medication. What supply are we talking about? That medication that's furnished under this provision. So the VA's brief does try to change this in the same furnishing, but the language is important here. The language does not say furnishing. It's not described the act of furnishing. It's talking about the supply cost, the product that the VA is purchasing. There are costs beyond just the medication, aren't there? There certainly would be costs beyond medication, but the statute, which is what limits the co-payment, is limited to the cost of the medication. There's a cost to the secretary. Is there a cost to the secretary for furnishing the medication, as well as for the medication itself? I would presume that there are costs to the secretary for furnishing, just as there's costs to the secretary for everything that the secretary does to administer veterans' benefits. But I think the operative question is, what can the VA charge to a veteran as a co-payment? And Congress's answer to that says, what you can charge is not the cost of furnishing. What you can charge is the cost of the medication, up to the cost of the medication. If I may, I think one thing that might help explain why Congress clearly was limited to the cost of medication rather than furnishing, if the VA's interpretation had been, it was correct and was what was intended in 1990, that would have essentially read A2 out of the act at the time it was enacted and made it superfluous. Because that would have meant that the VA's administrative costs, which were $7.28 in 2001, according to their formula, would either have been less than $2 in 1990, which, according to the rates of inflation, 300% inflation would not have, the inflationary costs wouldn't have resulted in administrative costs being less than $2. But in enacting A1 and A2, Congress clearly had in mind, either a veteran's going to pay the $2, or if their medication costs are less than $2, they're going to pay that lower cost. But were the VA's interpretation, the one Congress was following, there would have been no purpose for A2, because all costs would have been the $2 limit. Let me be sure I understand your position. Is it your position that under this statute, a proper reading of the statute, the only cost that the VA is entitled to recover from the veteran, they call it a copayment, but I'm not quite sure what it's co-of, they call it a copayment. Is it your position that the only cost they can properly recover is the cost of the product and no costs related to the administration and management of the VA delivery program? Correct, Your Honor. We believe that in of this textual language in context, in accordance with the veteran's hand, with all the tools that this court brings to bear, is the cost of the product, the cost of the medication. Now, as I understand the record, the $7 figure that they came up with in 2001 had nothing to do with the product. It actually was a calculation by the VA of its, quote, administrative costs. Do I understand that? Correct, Your Honor. So is it your view that ever since 2001 or perhaps earlier than that, they have been illegally collecting money from veterans because they never had used the cost of the product? Is that, so your view is the entire program since 2001 has been illegal? Your Honor, the entire program, the regulations they've been proceeding under since 2001 has not been in accordance with the statute. My client filed, on his own pro se, filed his complaint, I believe, in 2002. I mean, he, you know, the common veteran picked up on this. But, so let me make sure one other thing. As I understand your argument, then, the only way under your interpretation of the statute that the VA can properly impose a copayment is on a drug or medicine by medicine cost basis. That is, they would have to do essentially what my Blue Cross Blue Shield program does, which is configure a copayment for each medicine, each different medicine that I get a prescription for. Some of them are 89 cents, some of them are under the statute to tailor its recovery medicine by medicine. Absolutely. That's our view that A2, in setting a first, a flat... What about the packaging? The packaging, Your Honor, if the packaging is something the VA purchases not in purchasing, let's say, a 50-pack of medicine from Merck, that's the price they're paying for the medication. No, no. What about, you know, they get it in bulk, but of course you've got to treat it sanitarily. You don't grab it and hand it to you. So I presume it has to be picked up by proper tongs and then put in proper packages. And what about all that? Well, Your Honor, I don't believe that the statute allows for that cost to be considered. So you're going to advocate a medically inappropriate procedure? Absolutely not. The question is not what cost the VA or what the VA must do to administer this program. The question is what cost can the VA then charge to a veteran? If I may respond why we think we're in good standing to say that things such as packaging aren't included, in the 1990 conference report that accompanied this provision, Congress in that legislative history talked about the fact that supply costs weren't to be a part of the co-payment. The co-payment didn't include supply costs. And that certainly would be if the VA buys medicine in bulk from Merck and then buys supplies from another company, that would be a supply cost that Congress didn't envision being passed on as a part of this co-payment. Would you like to save your little time? Yes, sir. Thank you. Thank you. Mr. Goodman. Good morning, Your Honors. Excuse me. May it please the court. The fairest reading of what A2 does is it says that the VA can't charge a veteran such that the VA is making a profit. So it says the secretary may not require a veteran to pay an amount in excess of the cost the secretary for medication described in paragraph one. And as Your Honor noted, Judge Rader, paragraph one says 30 days supply of medication furnished as veteran. So looking at the whole statute together, it looks like what Congress was saying back when they first passed the statute was we want to make sure the VA is not making a profit on any individual veteran when charging the $2 co-pay for all veterans. And it was a $2 flat rate across the board. Mr. Goodman, how do you deal with what I asked before that the Brown can? Because we're all under an obligation for that statutory interpretation in favor of the vet. Yes, Your Honor. If there's no regulation in place, that's when the Brown canon applies. The Brown canon applies when this court has to, in the first instance, look at the statute. It's a two-step Chevron analysis. There's a statute and then there's a rate. If the Your Honor, you don't go past that point if the statute is clear. If Congress specifically spoke to the issue at play, then that ends the matter. But that doesn't include the veteran's canon. The VA is charged with interpreting the regulation in light of all of these interpretive tools as well, including the veteran's canon. And what the VA did here, even if the veteran's canon were to apply, which we don't believe it does as this court said in Sears and Haas and Nielsen as we outlined in our brief, but even if it were to apply, what the VA did here is incredibly pro-veteran policy. When Congress told the Secretary, you need to go and pass regulations in 1999, what Congress said is you need to look at two things. First of all, we need to raise more money. So you need to increase this copayment amount. And they also said, we want to make sure that no individual veterans are walking away and not getting care. So keep that balancing policy consideration in mind. The Secretary then did what Congress had done in the first place and established a single price applicable to all veterans and decided not to charge any veteran for the actual price of the medication that the Secretary was paying to suppliers, but instead to round down and only charge some portion of the administrative cost to all veterans. Well, slow down right there. Some portion of the administrative cost. Now, you quoted the statute, and of course, it's always good to begin with the statute, in excess of the cost to the VA. Do you understand the cost in that statutory provision to include packaging, administrative costs, overhead, electric lights, and all the rest of that? Yes, Your Honor. And do you also understand it to include the product that they are administering to the veteran? It includes all of those things. But the 2001 calculation for $7 jumped from $2 to $7. And ever since then, the increase based on medical, what is it? The increase in the medical index. The increase in the medical index, it's unclear to me whether that's just product or whether that's but whatever it is, there's nothing in any of that to suggest that the VA actually calculates the cost of its activity, even if it's including administrative costs. Because since 2001, they don't even include a factor for the cost of the product. So how can you even begin to within the terms of the statute as you yourself have elucidated it to us? And while you're answering, didn't you say that your agency is only doing the administrative part and not the medicine? So you're saying that the statute says cost, but you believe cost doesn't include the cost of the medicine itself? To be clear, we believe the word cost does include the price of the medicine itself and all administrative costs. Under subsection B, the secretary was given discretion to pass regulations to effectuate the goals of this statute. And in implementing that statute and passing regulations, what the secretary decided to do was only pass on some portion of the cost. The secretary could, of course, have to charge every veteran both the administrative cost and in addition, the actual cost of each individual medicine. The secretary didn't do that for a very good reason. There's a huge difference in the price of individual medication. Some, of course, cost hundreds of dollars per month. Some cost 25 cents. The secretary, in keeping in mind what Congress had explicitly said to keep in mind, which was that we don't want any veterans to walk away from this system, the secretary decided to have a single cost, a single copay, and not to vary it based on the actual price of the medication. So they were trying to balance, again, the two goals. So it's possible that some veteran could be given a prescription for a standard antibiotic that typically the copay is 29 cents or whatever it is these days. It's possible that a veteran could be given such a prescription and be paying more than the cost of that medicine and a proportionate share of the administrative cost. No, Your Honor. They can pay more than the price of the medicine itself, but not more than the administrative cost of providing that medication. Why not? Because the way the secretary created the regulation, they established a $7 charge, $7 copay, and the amount of their administrative costs at that time were greater than $7. What is it today? $12.38, by the way, in the latest federal register post, $12.39, I apologize. Every year, the secretary calculates what the administrative costs are, and based on this limitation in A2, the secretary needs to ensure that the amount that any veteran pays is less than that. Now, the most any veteran's paying is $9, so every veteran's getting a deal under this program. The secretary's never making a profit on any individual veteran, which is what A2 says. Some veterans are getting an incredible deal if their medicine costs hundreds of dollars and they're only paying $7. Some veterans, like Mr. Haino, are getting just a very good deal. If he went out on the private market, he would generally be paying, as Congress found, a slightly higher copayment amount. Here, he's paying somewhat less than the administrative cost and paying no additional cost, no additional cost based on the price of the medication. It's a good deal across the board. It's a very reasonable interpretation of the statute and a reasonable policy for the VA to put in place. Where's the record of that rulemaking that lays out that rationale and that determination? In the final few pages of Mr. Haino's reply brief, they discuss the regulations applicable to how the VA charges third parties, that's insurance companies who are being reimbursed, and they accurately describe those regulations. Well, I was asking about the rulemaking for the regs. Because you said there was a process by which the secretary made this determination and considered it and said, we're not going to even charge for the meds. We're just going to charge a portion. Where is that? The initial and final one moment. I assume that's 2001 rulemaking? Yes. In 2101 rulemaking, it's at 66 FR 63449-01 and 66 FR 36960-02. That's the proposed and final rule where the secretary laid out exactly what he was doing here. In that final rule, the secretary noted that the statute allowed for pharmacy administrative costs related to dispensing of medicine. And the VA occurred a cost of $7.28 at that time to dispense an outpatient medication, even without consideration of the actual cost of the medication. So the secretary made a conscious decision not to round it down to $7, not to add to that administrative cost any additional charge for the actual cost of medication, as I explained the rationale behind that. What you're saying is logically determinable out of that. Is there an actual statement, and we're not going to include the meds in that? I didn't notice it. What it says is VA occurs a cost of $7.28 to dispense the medication. That's what it says. And we've gone over why policy-wise that's a good thing to do, and we've discussed how that was something that the secretary was entitled to do in light of what the statute says. So you do agree that Chevron step one is clearly met, that is the term cost in this context gives the government a rather wide opportunity to interpret what it is it's said in Verizon, as many courts have noticed multiple times. Yes, cost is ambiguous. Okay. So we get past Chevron step one. Congress didn't specifically spell out here what they wanted the cost to do. We pointed out in our brief. And if we're going to apply the veterans benefit presumption, it would be applied? If it were to be applied at all, it would be in Chevron step two, but we don't believe it applies at all when there's a regulation in place. Because Chevron deference says that the secretary's interpretation is entitled to deference. It's hard to imagine how one could apply it in light of Chevron. So Mr. Hano's argument is that it applies at step one. In that situation, all ambiguity would be resolved in the veteran's favor, whatever this court decided that that was, and the secretary's interpretation would get no deference at all. And then we can imagine a couple of years later, a different veteran comes in with a different interpretation. And this court says, well, that's even more pro-veteran. So we go with that one. That doesn't really make a lot of sense. It doesn't afford any discretion to the secretary who was charged specifically in this case by Congress to Mr. Hano says that the 99 statute is irrelevant. He says it fails to provide any guidance here, and then says that the 2003 statute is also irrelevant because that's a case of inaction. Neither statements are accurate. In 99, Congress, as I just said, not just, this is not rulemaking made under the general guise of rulemaking that the secretary is charged with. Congress specifically said, we want the secretary to use their expertise and to establish a rate here. And Congress said how to do that. They didn't say a whole lot. Then the legislative history, they said, look at TRICARE, which is $9. Look at other plans, which are $5 to $10. Come up with a number and keep in mind, we don't want veterans to walk away. And then in 2003, Congress came in and amended, not just the statute as a whole, but specifically subsection A of the statute. Congress had at that point charged with knowing what the regulation was in effect. Congress didn't change that, but said, we want to add to this that POWs don't have to pay any copayment at all. So Congress was looking at this particular subsection. It's not a case of inaction. It's a case of congressional action. And there are a number of cases that hold that when Congress changes the very statute in question that Congress is charged with knowing what the regulations are implementing that, and that is a sign of approval by Congress. There are no further questions, Your Honors. We respectfully request that this Court affirm the decision. Oh, one question. You referenced the end of the gray brief. And in there, there's an argument that the Secretary could track increases in cost each year, and the agency says, no, it's too complicated. And Mr. Hano makes an argument that, well, you do it in other circumstances. Discuss that a little bit. Mr. Hano's right. We do do it in their context. Section 1729. That's okay. Go ahead. Respond to the question. That's the section. That's right, Your Honor. The Secretary does calculate administrative costs and does calculate the cost of individual drugs in order to charge insurance companies. The reason that the Secretary decided not to do it here is because the Secretary chose not to pass on those costs to the veterans. So that's the real answer. Thank you, Mr. Goodman. Mr. Momin. Thank you, Your Honor. I'd like to address three points that my friend made. First, talking about the application of the veterans' canon and how it fits in the Chevron framework. I think this Court could look at many of its cases, going back to the Disabled Americans veteran case from, I think, 2000, 2001, where it talks about the canon. Isn't the whole reg beneficial to the veteran? Already, the veteran's getting a deal. Well, Your Honor, and actually, if I could finish that thought just a second. At Kilpatrick, there was a case I would particularly direct the Court to look at the Chevron aspect of applying Brown in Chevron. But to Chief Judge Rader's question, my friend here said it was beneficial to all veterans. There's nothing in the regulatory history that that was ever a consideration for what the VA did. The VA never did a study and said, we think that this will be overall more advantageous to veterans as a whole than not. The only thing they looked at was their administrative costs, what those maximum were, and what they could charge up to that. But if they charged you the full administrative costs, you'd have to pay more. If they were charging you what it actually cost the Secretary to provide this program, you would pay more, and the person with the $130 pill medication would pay a lot more, right? Well, it's assuming... And we double and triple the administrative costs because we'd have to figure those expenses for every single med. Correct. And actually, I think the response, though, is that we don't know that my client would necessarily pay more. And I think this ties into one of the points that was made that this is an average administrative cost across all medications. And as my friend mentioned, there are certain medicines that could be very expensive in the hundreds versus Mr. Hino's medicine, which was at least less than a quarter. But it said that those are the administrative costs without considering the cost of the meds. Right. But medications, depending on the type of medication, also will have associated with it a higher administrative cost. Do you agree with your opposing counsel that the Secretary made an intentional decision not to include the cost of the meds? Well, I don't know if I would use the word intentional. I think the Secretary made a decision that it's easy for us to do an average across the board of all of our administrative costs. And this is a easy solution for us to avoid having to ever look at what the cost of the actual medication being provided. Even though, as the government has admitted, they do do this in other contexts, they can track it. Instead, they say, we're going to do a snapshot in time and then set this on an automatic escalator so that we never have to look again at what our administrative costs or our drug costs or our actual product costs are for this medication. Do you agree that no vet is being charged for the actual cost of the medication? To my knowledge, no veteran is being charged for the actual cost. And we don't know that veterans aren't paying more as an average administrative cost than what actually the in their cost for purchase, but they also vary in their cost of administration. The government pointed to the 1999 legislation. Again, I think that legislation is instructive on what Congress really intended this to mean. In there, Congress talked about allowing the VA to raise its copayment and noted that the VA could, in particular, raise the copayment to address providing certain lifestyle drugs, such as Viagra. And the court noted those drugs are very expensive, that the VA could adjust its copayment to reflect the cost of those drugs versus maintaining a different copayment for other drugs. So I would submit that the 1999 legislative history doesn't rewrite what Congress did in 1990. But in fact, it's supportive of our position that Congress, even in 1999, was focused on the cost of medication, what the VA paid for the medication rather than these administrative costs applied across the board. I have two questions for you. One's on the record and one's off the record. The question on the record is the following. As I understand it, Mr. Hino was pro se before the board and again before the Veterans Court. Is that right? Correct, Your Honor. And you all came in on the appeal here. Correct, Your Honor. And you all have broadened the scope of the argument. Off the record question is the following. Are you all doing this pro bono under our program for veterans? We're not. We're doing it pro bono, Your Honor, but not under that established program. Okay. The only relevance of that question is if you're doing it pro bono, I, for one, appreciate you doing it and I'm sure the court does as well. That's very helpful to us to have that kind of representation. And I'm sure the government does too. I'm serious about having that. And if I may just add one clarification to, you know, I think Mr. Hino from the beginning saw this not necessarily from his own. He saw the disagreement in his own terms, but he's always, I think if you look at the record and his pleadings through there, has always tried in his own way to frame this as, you know, the VA shouldn't be allowed to charge veterans, not just him, in more of the cost of the medication. So I don't believe we're necessarily broadening the scope of the issues. Thank you, Mr. Hino. Thank you. That concludes this morning. All rise. The Honorable Court is now adjourned until tomorrow morning at 10 a.m. Where are you going? Enjoy. Yeah, yeah. Thank you. Thank you. Thank you. What do you think? Yeah. Have a good day. Thank you. Okay. Right. All right. Thank. Silence. Silence. Silence. Silence. Silence. Silence. Silence. Silence. Silence. Silence.